McCARTHY, UNITED STATES MARSHAL FOR THE SOUTHERN DISTRICT OF NEW YORK, *v.* ARNDSTEIN.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 404. Argued April 11, 1923.—Decided May 21, 1923.

1. A disclosure made by a witness not amounting to an actual admission of guilt or of incriminating facts, does not deprive him of his privilege of stopping short in his testimony whenever it may fairly tend to incriminate him. P. 358.
2. This rule applies to the involuntary examination of a bankrupt. *Id.*
3. Where the only issue presented by the Marshal's return, or passed upon by the District Court, in a *habeas corpus* proceeding, was whether the relator, who had been imprisoned for refusal to answer questions propounded in his examination as a bankrupt, upon the ground that they might incriminate him, had waived his privilege in that regard; and contentions as to whether some of the questions were such that the answers could not have incriminated him and as to whether his claim of privilege was not in good faith were first made on appeal to this Court from the order of the District Court discharging him in the *habeas corpus, held,* that this Court was not called upon to scrutinize the voluminous record of his examination, and decide, for the first time, whether such contentions were justified, especially as the District Judge, in the contempt proceeding, had expressed his opinion that answers to the questions might furnish incriminating information. P. 360.
Affirmed.

APPEAL from an order of the District Court discharging the appellee, in *habeas corpus.*

Mr. *Saul S. Myers* and Mr. *Walter H. Pollak,* Special Assistants to the Attorney General, with whom Mr. *Solicitor General Beck* and Mr. *Lindley M. Garrison* were on the briefs, for appellant.

Mr. *W. J. Fallon* for appellee.

MR. JUSTICE SANFORD delivered the opinion of the Court.

This is an appeal from an order of the District Court sustaining a writ of *habeas corpus* and discharging the appellee from custody. It involves the same proceeding which was before this Court at an earlier stage in *Arndstein* v. *McCarthy,* 254 U. S. 71 and 379.

Arndstein, having been adjudicated an involuntary bankrupt and called before a Special Commissioner for examination as to his assets under § 21a of the Bankruptcy Act, refused to answer four hundred and forty-seven of the questions which were asked him, asserting his constitutional privilege upon the ground that to do so might tend to degrade and incriminate him. The district judge, having " no doubt that the answers might furnish information which would render him liable to prosecutions in the federal courts for concealment of assets," denied a motion to punish him for contempt. After his examination, however, Arndstein filed, without objection, sworn schedules of his assets and liabilities, showing only one item of property, namely, a bank deposit of $18,000. Thereupon, the district judge, being of opinion that Arndstein thus asserted not only that he had this bank deposit but also that he had no other property, and had thereby become subject to examination as to his property, ordered him to answer four hundred and twenty-six of the former questions. Being recalled for further examination he again refused to answer them, upon the same ground as before. He was then adjudged to be guilty of contempt of court and committed to the custody of the Marshal for confinement in jail so long as he persisted in his refusal to answer.

He thereupon presented to the District Court a petition for a writ of *habeas corpus,* alleging that he was restrained of his liberty without due process and in violation

of the Federal Constitution.  This petition was held to be insufficient, and the writ was refused.  Upon an appeal by Arndstein this Court held that as the schedules did not amount to an admission of guilt or furnish clear proof of crime, they did not constitute a waiver of his right to stop short whenever he could fairly claim that to answer might tend to incriminate him; and the order of the District Court was accordingly reversed and the cause remanded for further proceedings in conformity with the opinion.  *Arndstein* v. *McCarthy, supra,* pp. 72, 73.  In a supplemental memorandum (p. 379) it was added that this decision only required the District Court to issue the writ and proceed as usual, and that if proper reasons existed for holding Arndstein not shown by the petition they might be set up in the return for consideration.

Thereafter the District Court, in accordance with the mandate of this Court, vacated its former order and issued the writ of *habeas corpus;* to which the Marshal made return, exhibiting a transcript of the entire proceedings before the Commissioner.  Aside from general denials of the illegality of Arndstein's commitment the only ground set up in the return as a reason for holding him was that, after being notified by the Commissioner of his privilege, he had, before refusing to answer the questions in issue, testified of his own accord, without invoking any privilege, to the very matters with which these questions were concerned, thereby waiving his privilege upon further examination concerning them.  Upon a hearing on the petition and return, the District Court was of opinion that, although in certain answers made without objection Arndstein had denied that he had any stocks or bonds in his possession or under his control at any time during the preceding year, the conclusion to be drawn from the decision of this Court in reference to the schedules was that his denials or partial disclosures as a witness did not terminate his privilege so as to deprive him of the right to

refuse to testify further about his property, and that he
was at liberty to cease disclosures, even though some had
been made, whenever there was just ground to believe the
answers might tend to incriminate him; and it accord-
ingly sustained the writ and discharged him from cus-
tody.   The Marshal, by reason of the constitutional ques-
tion involved, has appealed directly to this Court.   Jud.
Code, § 238; *Boske* v. *Comingore,* 177 U. S. 459, 465;
*Collins* v. *Miller,* 252 U. S. 364, 365, 371; *Arndstein* v.
*McCarthy, supra,* p. 72.

We find no error in the order of the District Court:

1. The opinion of this Court upon the former appeal
was not based upon the ground, as the Marshal in effect
contends, that schedules filed by a bankrupt are so essen-
tially different from evidence given by him that, whatever
their disclosures, they cannot constitute a waiver of his
privilege against incrimination when he is called for com-
pulsory examination under the Bankruptcy Act.   On the
contrary, the sworn schedules were, impliedly at least,
assimilated to evidence given by the bankrupt as a wit-
ness, the ground upon which they were held not to have
waived his privilege against subsequent incrimination be-
ing thus stated (p. 72): " The schedules standing alone
did not amount to an admission of guilt or furnish clear
proof of crime and the mere filing of them did not consti-
tute a waiver of the right to stop short whenever the
bankrupt could fairly claim that to answer might tend to
incriminate him.   See *Brown* v. *Walker,* 161 U. S. 591,
597; *Foster* v. *People,* 18 Michigan, 266, 274; *People* v.
*Forbes,* 143 N. Y. 219, 230; *Regina* v. *Garbett,* 2 C. & K.
474, 495."

The four cases thus cited related to testimony given by
witnesses and the limit upon their right to stop disclos-
ures.   In *Brown* v. *Walker,* this Court said that " if the
witness himself elects to waive his privilege  .  .  .  and
discloses his criminal connections, he is not permitted to

stop, but must go on and make a full disclosure "; in *Foster* v. *People,* the court, while holding that a witness who has voluntarily admitted his guilt of a criminal offense is not protected from further disclosures on the same subject, said that if he has not actually admitted criminating facts, he " may unquestionably stop short at any point, and determine that he will go no further in that direction "; in *People* v. *Forbes,* it was held that a witness by answering questions exonerating himself in general terms from all connection with a criminal transaction, does not thereby waive his right to remain silent when it is thereafter sought to draw from him circumstances which might form another link in the chain of facts capable of being used to his peril; and in *Regina* v. *Garbett,* it was held that it makes no difference in the right of a witness to protection from incriminating himself that he has already answered in part, he being " entitled to claim the privilege at any stage of the inquiry."

In short, it is apparent not only from the language of the former opinion but from its citations that this Court applied to the non-incriminating schedules the rule in the cases cited, namely, that where the previous disclosure by an ordinary witness is not an actual admission of guilt or incriminating facts, he is not deprived of the privilege of stopping short in his testimony whenever it may fairly tend to incriminate him.  And although there is some conflict of authority as to the application of this rule, we see no reason for departing from its recognition in the former opinion, and think that it is the sound rule which should be applied to the involuntary examination of a bankrupt where he is practically in the position of a witness under cross-examination.  And since we find that none of the answers which had been voluntarily given by Arndstein, either by way of denials or partial disclosures, amounted to an admission or showing of guilt, we are of

opinion that he was entitled to decline to answer further questions when so to do might tend to incriminate him.

2. The Marshal also contends that in many instances the questions which Arndstein refused to answer were plainly of such a character that the answers could not have incriminated him, and that his whole testimony shows that he was not making his claim of privilege in good faith, but largely in obedience to suggestions of his counsel, who in some instances claimed the privilege for him. It is, however, a sufficient answer to this contention that no such reasons for denying the writ were set up in the Marshal's return, or, so far as it appears, brought to the attention of the District Court or ruled upon by it. And in such case we are not called upon, on appeal, to examine, as with a microscope, the multitudinous questions in issue, involved in an unduly protracted examination, containing many vain and futile repetitions, much of which does not appear to have had any relation to a discovery of assets of the bankrupt but was of such character as to suggest that the underlying purpose was the discovery of evidence to support the charge of grand larceny for which Arndstein had been indicted in the state court; or to determine, as original questions in this Court, matters not in issue under the pleadings in the District Court or determined by that court.

Furthermore, the district judge, in ruling in the bankruptcy proceedings on the first motion to punish Arndstein for contempt, had, as shown, specifically stated that he had no doubt that answers to these questions might furnish incriminating information. There was clearly no abuse of discretion in this ruling which would justify us in reviewing it under the writ of *habeas corpus*. And it may be added, that on the first appeal this Court also stated that it was " impossible to say from mere consideration of the questions propounded, in the light of the circumstances disclosed, that they could have been an-

swered with entire impunity." *Arndstein* v. *McCarthy, supra,* p. 72.

The order of the District Court sustaining the writ and discharging Arndstein from custody is accordingly
                                        *Affirmed.*