**UNITED STATES**

v.

**Diantha HOAG.**

**Cr. No. 574.**

United States District Court
District of Columbia.

July 6, 1956.

Oliver Gasch, U. S. Atty., William Hitz, Asst. U. S. Atty., Washington, D. C., for plaintiff.

Charles E. Ford, Washington, D. C., for defendant.

PINE, District Judge.

The defendant stands indicted in an eight-count indictment for violations of 2 U.S.C.A. § 192, which makes it an offense, under certain circumstances, for a person to refuse to testify before a committee of either house of Congress. More specifically, the indictment charges that the Senate Permanent Subcommittee on Investigations, of the Committee on Government Operations of the Senate, was conducting hearings, and that defendant appeared as a witness before this subcommittee and was asked questions which were pertinent to the question under inquiry, which she unlawfully refused to answer. Each of the eight counts relates to a separate question. Trial by jury has been waived.

It appears undisputed that defendant appeared before a quorum of this subcommittee pursuant to subpoena, and was duly sworn and interrogated. The transcript of these proceedings consists of eight printed pages. She answered some questions, but refused to answer approximately 29, specifically invoking the Fifth Amendment to the Constitution. Among these 29 questions which she refused to answer on this ground are the eight made the basis for the indictment. Her claim of privilege in each case was clear and unequivocal, and she was directed to answer in equally clear and unequivocal language. I find that the questions propounded which were included in the indictment were pertinent to the question then under inquiry, and that this question was within the purview of the authority of the subcommittee, and had a legislative purpose.

The point for determination, and on this hinges defendant's guilt or innocence, is whether she was required, under the law, to answer the questions after having refused so to do in reliance on

the Fifth Amendment. The Government concedes that, standing alone, this reliance would offer a complete defense, but claims that she waived her rights under the Fifth Amendment by virtue of an answer she gave to a previous question. That question was as follows:

> "If the Communist Party ordered you to sabotage the work you are doing, assuming that we were at war with Communist Russia, would you obey those orders or would you refuse to obey them?"

On that question defendant said she would make a statement. The Chairman agreed that she might, and then she answered as follows:

> "I have never engaged in espionage nor sabotage. I am not so engaged. I will not so engage in the future. I am not a spy nor saboteur * * * *"

The issue, therefore, is whether, by giving that answer, she waived her rights, under the Fifth Amendment, to the questions subsequently propounded. These, generally speaking, had to do with whether she had given information about her work to members of the Communist Party, whether she had discussed at a Communist Party meeting classified Government work, whether she received any clearance before 1947 to work on classified work, whether she did some espionage for the Communist Party seven and one-half years before, the character of work she was doing before 1947, and the city where she worked before her present job.

It is the Government's contention that these questions come within the area of her answer above quoted, and having given that general answer, she waived her right to refuse to answer the specific questions thereafter propounded on the ground that they might incriminate her. It is defendant's contention that her answer, which the Government claims is a waiver, was not incriminating and therefore did not foreclose her from claiming her privilege under the Fifth Amendment to the specific questions involved; in

other words, that it did not constitute a waiver.

The answer to these opposing contentions is found, in my opinion, in the decisions of the Supreme Court, which I shall now discuss.

In Arndstein v. McCarthy, 254 U.S. 71, 41 S.Ct. 26, 65 L.Ed. 138, Arndstein had been adjudged an involuntary bankrupt and was called before special commissioners for examination under the Bankruptcy Act, 11 U.S.C.A. § 1 et seq. He refused to answer a long list of questions, claiming that to do so might tend to incriminate him. The District Judge upheld this contention, and denied a motion to punish for contempt. He thereafter filed schedules purporting to show his assets and liabilities. When interrogated concerning these, he set up his constitutional privilege and refused to answer many questions. He was held in contempt, and applied for a writ of habeas corpus, which was refused upon the theory that, by filing the schedules, he waived his constitutional privilege and could not thereafter refuse to reply when questioned in respect of them. The Supreme Court, by Mr. Justice McReynolds, held that this view of the law was erroneous, stating that "The schedules, standing alone, did not amount to an admission of guilt or furnish clear proof of crime, and the mere filing of them did not constitute a waiver of the right to stop short whenever the bankrupt could fairly claim that to answer might tend to incriminate him."

Later, in McCarthy v. Arndstein, 262 U.S. 355, 43 S.Ct. 562, 67 L.Ed. 1023, this case was again before the Supreme Court on appeal from an order of the District Court sustaining a writ of habeas corpus and discharging Arndstein from custody. This later decision came about in this manner. After the case had been remanded to the District Court for further proceedings in conformity with the opinion above mentioned, that court vacated its former order and issued the writ of habeas corpus, to which the marshal made return exhibiting a transcript of the entire proceedings before

the commissioner. Aside from general denials of the illegality of Arndstein's commitment, the only ground set up by the marshal as a reason for holding him was that he had, before refusing to answer the questions, testified of his own accord, without invoking any privilege, to the very matters with which these questions were concerned, thereby waiving his privilege upon further examination concerning them.

Upon a hearing on the petition and return, the District Court was of opinion that, although in certain answers made without objection, Arndstein had denied that he had any stocks or bonds in his possession, the conclusion to be drawn from the decision of the Supreme Court in reference to the schedules was that his denials or partial disclosures as a witness did not terminate his privilege so as to deprive him of the right to refuse to testify further about his property, and that he was at liberty to cease disclosures, even though some had been made, when there was just ground to believe the answers might tend to incriminate him. The District Court accordingly sustained the writ and discharged him from custody.

The Supreme Court, in an opinion by Mr. Justice Sanford, 262 U.S. 355, 43 S.Ct. 562, 563, 67 L.Ed. 1023, found no error in the District Court's decision.

In discussing the question presented, the Court referred to four cases. The first was Brown v. Walker, 161 U.S. 591, 597, 16 S.Ct. 644, 647, 40 L.Ed. 819, where the Court said that "if the witness himself elects to waive his privilege * * * and discloses his *criminal connections,* he is not permitted to stop, but must go on and make a full disclosure." The second was Foster v. People, 18 Mich. 266, 274, in which the Michigan court held that a witness who has voluntarily admitted his guilt of a criminal offense is not protected from further disclosures on the same subject, but that if he has not actually admitted *criminating facts,* he "may unquestionably stop short at any point and determine that he will go no further in that direction." The

third case was People ex rel. Taylor v. Forbes, 143 N.Y. 219, 230, 38 N.E. 303, 306, which held that "a witness, by answering questions exonerating himself in general terms from all connection with a *criminal transaction,* does not thereby waive his right to remain silent when it is thereafter sought to draw from him circumstances which might form another link in the chain of facts capable of being used to his peril." The fourth case was Regina v. Garbett, 2 C. and K. 474, 495, in which "it was held that it makes no difference in the right of a witness to protection from incriminating himself, that he has already answered in part, he being 'entitled to claim the privilege at any stage of the inquiry'."

After the foregoing reference to these cases, the Supreme Court held [262 U.S. 355, 43 S.Ct. 563] "that where the previous disclosure by an *ordinary witness* is not an actual admission of guilt or *incriminating facts,* he is not deprived of the privilege of stopping short in his testimony whenever it may fairly tend to incriminate him", and since "none of the answers which had been voluntarily given by Arndstein, either by way of *denials* or partial disclosures, amounted to an *admission or showing of guilt,* we are of the opinion that he was entitled to decline to answer further questions when so to do might tend to incriminate him." (Italics supplied.) The order of the District Court sustaining the writ and discharging Arndstein from custody was accordingly affirmed.

These decisions were again considered by the Supreme Court in the relatively recent case of Rogers v. United States, 1951, 340 U.S. 367, 71 S.Ct. 438, 442, 95 L.Ed. 344. That case grew out of an investigation by the grand jury of the United States District Court for the District of Colorado. Respondent was convicted of contempt for refusal to answer questions asked by a Federal grand jury. Respondent in response to a subpoena, appeared before the grand jury and testified that she had held the position of treasurer of the Communist Party in Denver, but refused to identify the

person to whom she had given the Party's books, finally asserting the privilege against self-incrimination. This claim came after she had testified, as stated, to her status as an officer of the Party. In an opinion by Chief Justice Vinson, the Court, referring to Brown v. Walker, supra, stated that "federal courts have uniformly held that, where criminating facts have been voluntarily revealed, the privilege cannot be invoked to avoid disclosure of the details", and that the Arndstein cases, supra, "further support the conviction in this case for, in sustaining the privilege on each appeal, the Court stressed the absence of any previous 'admission of guilt *or incriminating facts*'" (Italics in opinion.) Also in its opinion the Court quoted with approval from Foster v. People, supra, and then made the following statement: "Requiring full disclosure of details after a witness freely testifies as to a *criminating* fact does not rest upon a further 'waiver' of the privilege against self-incrimination. Admittedly, petitioner had already 'waived' her privilege of silence when she freely answered *criminating* questions". (Italics supplied.)

Very recently the question here involved came before the Court of Appeals for this circuit, in Powell v. United States, 1955, 96 U.S.App.D.C. 367, 226 F.2d 269, 276. Powell was convicted of contempt on the ground that he gave obstructive and contumacious answers to questions propounded to him before the grand jury, and that he disobeyed a court order that he answer. He asserted his privilege under the Fifth Amendment. On this point, the Court of Appeals for this circuit had the following to say: "It is said Powell had no privilege, because he had already answered and so opened the door to further questioning under the Rogers doctrine. But his earlier answers had been that he had no diaries, and so he did not open any door. If he had said he had the diaries and then refused to testify further about them, the privilege might not lie; this might be the Rogers doctrine. We think the Rogers doctrine does not apply to Powell's claim of the privilege in response to the ten questions put to him upon his third appearance before the Grand Jury."

The rule of law, therefore, as announced by these cases, is that the voluntary answer must be "criminating" to prevent the witness from stopping short and refusing further explanation. The defendant in this case did not testify as to any criminating fact; on the contrary her testimony relied on by the Government as requiring her to answer the questions herein involved were completely non-incriminating in character and, under the authorities above mentioned, she had the right to "stop short" and assert her privilege.

In support of its position, the Government presses on me certain cases, but they are either not in point or do not support its contention.

Among others, it refers to Rogers v. United States, supra (also relied on by defendant) as authority in support of its claim of a waiver. But as above pointed out, this is authority against its position, because the waiver in that case came about by reason of the *incriminating* testimony previously given by respondent, which is not present here.

The other cases principally relied on by the Government do not relate to a refusal to answer under the Fifth Amendment, but to evidential questions arising when a defendant in a criminal case takes the stand and testifies. Among them is Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503. That was a criminal case where the defendant elected to testify, and denied that he had ever possessed any narcotics. The court held that it was proper for the Government to cross-examine him about a heroin capsule unlawfully seized from his home on a prior occasion. The defendant denied that narcotics were taken from him at that time, and the court held that the Government might thereafter properly offer the evidence which had been previously suppressed, to rebut his testimony. Also relied on by the Government

is Raffel v. United States, 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054, a criminal case where the court held that it was proper to require the defendant to disclose that he had not testified at his first trial. Also cited is Viereck v. United States, 78 U.S.App.D.C. 279, 139 F.2d 847, 851. That also was a criminal case where defendant, "under no compulsion whatever", took the stand and testified in his own defense. The court held that it was proper for the Government to develop before the jury that on previous occasions he had refused to testify on the ground that his testimony might tend to incriminate him. This was held admissible for the purpose of attacking his credibility by showing manifest inconsistencies in the illusion he sought to create as to his willingness to tell fully and frankly all that he knew. Also cited is Dowling Bros. Distilling Co. v. United States, 6 Cir., 153 F.2d 353, where a defendant had testified on cross-examination, that he had never sold any whiskey over the ceiling price. The court held it was proper for the Government to offer testimony as to overpayment made to defendant under circumstances similar to those charged in the indictment, because it went to his credibility. In none of these cases, as above noted, was the issue here involved before the court. None of them involved a refusal to testify on the ground of self-incrimination, and none of them involved the question of any waiver of this right.

The Government also cited the case of Reagan v. United States, 157 U.S. 301, 15 S.Ct. 610, 39 L.Ed. 709, but there the issue was whether the judge erred in charging the jury that it should consider defendant's personal interest in the outcome of the case when weighing his testimony. The court held that this was proper, and stated that a defendant, when he assumes the position of a witness, is entitled to all its rights and is subject to all it burdens.

From this statement, the Government argues that, if the position of a defendant when he testifies is no different from that of an ordinary witness, the position of an ordinary witness is no different from that of a defendant. But this generalization overlooks the fact that, when a defendant takes the witness stand and testifies, "His waiver is not partial", and "having once cast aside the cloak of immunity, he may not resume it at will, whenever cross-examination may be inconvenient or embarrassing." Raffel v. United States, supra [271 U.S. 494, 46 S.Ct. 568]. see also Johnson v. United States, 318 U.S. 189, 195, 63 S.Ct. 549, 87 L.Ed. 704. In the case of an ordinary witness, however, he does not waive his immunity unless he fails to invoke it when an answer might tend to incriminate him, or unless he has given incriminating testimony, in which case he waives it so far as further details in respect thereof are concerned. Also, it should not be overlooked that the status of a defendant who testifies in his own behalf is different from that of an ordinary witness, e. g., one before a grand jury or a congressional committee. The former is not required to testify, but may make his choice of testifying or not, with the right to have the jury instructed that his failure to testify creates no presumption against him. The ordinary non-defendant witness is required to appear and answer questions unless he properly claims that his answers may tend to incriminate him.

Two other cases cited by the Government, namely, United States v. Weisman, 2 Cir., 111 F.2d 260, 261, and United States v. St. Pierre, 2 Cir., 128 F.2d 979, and 2 Cir., 132 F.2d 837, 840, 147 A.L.R. 240, relate to the question of waiver of the privilege, but the former simply stated that Weisman's answers, claimed to be an abandonment, "were slips, and not really intended as an abandonment", and the latter supports the position of the defendant in that the court stated in the later of the St. Pierre cases that it need go no further "than to hold that, at least after a witness has confessed all the elements of the crime, he may not withhold the details; * * *." In the case at bar, as above stated, the defendant confessed none of

the elements of the crime, but denied any wrongdoing.

Having in mind the admonition in the recent case of Emspak v. United States, 1955, 349 U.S. 190, 196, 75 S.Ct. 687, 691, 99 L.Ed. 997, quoting from Smith v. United States, 337 U.S. 137, 150, 69 S.Ct. 1000, 93 L.Ed. 1264, that "'Waiver of constitutional rights * * * is not lightly to be inferred'", and in the light of the controlling decisions of the Supreme Court and the Court of Appeals for this circuit, above referred to, I reach the conclusion that the defendant did not waive her privilege under the Fifth Amendment and therefore did not violate the statute in question in refusing to answer the questions propounded to her. Therefore, I find that she is entitled to a judgment of acquittal on all counts, and judgment will be entered accordingly.