In the Matter of BON VOYAGE TRAV-
EL AGENCY, INC., an Illinois
Corporation, Bankrupt.

No. 76 B 5139.

United States District Court,
N. D. Illinois, E. D.

March 24, 1978.

Nachman, Munitz & Sweig, Frank O.
Wetmore, Chicago, Ill., for bankrupt or
debtor.

Alex Dolnick of Holleb, Gerstein & Glass, Chicago, Ill., for receiver.

Dan K. Webb of Cummins, Decker & Webb, Chicago, Ill., for Joseph A. Heitzinger.

Memorandum

LEIGHTON, District Judge.

This cause is before the court on the certificate of a bankruptcy judge pursuant to Rule 920(a)(4), Rules of Bankruptcy Procedure, 11 U.S.C., which provides that "[i]f it appears to a referee that conduct prohibited by section 69(a) of this title [1] may warrant punishment by imprisonment or by a fine of more than $250, he may certify the facts to a district judge. On such certification the judge shall proceed as for a contempt not committed in his presence." The parties have stipulated that in disposing of this case, the court may accept the certified facts as if they were "proved in a full evidentiary hearing in open court with the parties having all rights attendant thereto." Accordingly, this court will proceed on the assumption that a hearing before it would establish the following facts, as shown in the certificate of the bankruptcy judge.

I.

On September 8, 1976, the bankruptcy court authorized the issuance of subpoena that directed Joseph A. Heitzinger to appear for an examination pursuant to the provisions of Rule 205(a),[2] Rules of Bankruptcy Procedure, and bring with him his federal income tax returns for the years 1973 through 1975. Heitzinger appeared with the tax returns; but during the examination, he invoked his privilege against self-incrimination with regard to their content. The examination was continued to October 28, 1976 when, under questioning by the attorney for the trustee of the bankrupt estate, the following exchange occurred:

Q. Did you file personal income tax returns with the Internal Revenue Service for the years 1973, '74, and '75?

MR. WEBB: Your Honor, may I have a brief conference with my client for one second? May I ask leave of the Court?

THE COURT: All right.

MR. WEBB: For one second, your Honor. Thank you.

(off the record)

MR. DOLNICK: Miss Reporter, please read back the last question.

(Court Reporter read back the last question.)

A. Yes, I did. They were prepared by my controller, Eileen Weisenburger, for me.

Q. When the subpoena was served on you, you were asked to bring copies of your returns for those years. Do you have them with you?

A. No, I do not.

Q. Where are they?

A. At home.

Q. Did you note that in the subpoena you were asked to bring them with you?

A. Well, I brought them last time. I did not know I was supposed to bring them this time.

Q. Pardon?

1. The provision states that

"[a] person shall not, in proceedings before a referee, (1) disobey or resist any lawful order, process or writ; (2) misbehave during a hearing or so near the place thereof as to obstruct the same; (3) neglect to produce, after having been ordered to do so, any pertinent document; or (4) refuse to appear after having been subpoenaed, or, upon appearing, refuse to take the oath as a witness, or having taken the oath, refuse to be examined according to law: *Provided,* That a person other than a bankrupt or, where the bankrupt is a corporation, its officers, or the members of its board of directors or trustees or of other familiar controlling bodies, shall not be required to attend as a witness before a referee at a place more than one hundred miles from such person's place of residence or unless his lawful mileage and fee for one day's attendance shall be first paid or tendered to him." 11 U.S.C. § 69(a).

2. This rule provides that "[u]pon application of any party in interest, the court may order the examination of any person. The application shall be in writing unless made during a hearing or examination or unless a local rule otherwise provides."

A. I was subpoenaed last time. I brought them last time. I did not bring them this time.

Q. If the Court sees fit to continue this matter, will you bring them next time?

A. Yes.

MR. DOLNICK: Will the Court direct Mr. Heitzinger to bring the documents next time?

THE COURT: Yes, you will bring with you at any adjourned hearings with reference to any testimony you give in this cause documents that were requested of you by subpoena, and those are your income tax returns for what?

THE WITNESS: Prepared by Eileen Weisenburger, my controller.

THE COURT: Is that what you are asking for?

MR. DOLNICK: I am asking for '73, '74, and '75.

THE COURT: All right. You bring those with you the next time.

The "next time" to which the bankruptcy judge referred was November 23, 1976 when, at the beginning of the proceedings, Heitzinger's lawyer informed the court that he had the returns. Counsel for the trustee renewed the examination and asked Heitzinger, "Do you have the tax returns with you?" Heitzinger replied by saying that on the advice of his lawyer he was invoking his Fifth Amendment right, and thus, would not produce them. The attorney for the trustee demanded that the bankruptcy judge order surrender of the returns to him on the ground that Heitzinger's statements in court at his last appearance, and his promise to bring the returns, waived his Fifth Amendment right. Heitzinger's lawyer resisted the demand with the contention that Heitzinger had not waived his Fifth Amendment privilege by promising that on the continued day he would bring the returns to court. The lawyer argued that while Heitzinger was under subpoena to produce the returns and had complied with the process by bringing them to court, he had not waived his right to plead the Fifth Amendment with regard to their content.

The judge requested memoranda of law on the issue thus raised; and after considering them, he issued an order concluding that Heitzinger's "agreement in open court to produce his Federal income tax returns was made knowingly and voluntarily and after consultation with his counsel. [His] agreement to produce his Federal income tax returns constituted a waiver of his privilege under the Fifth Amendment to the Constitution to refuse to produce said returns. [His] refusal to produce the returns after being so directed by this Court is contempuous [sic]." He ordered Heitzinger to appear before a district judge "to show cause why he should not be adjudged in contempt by reason of the facts hereinabove certified, and why he should not then and there be committed to prison or otherwise dealt with until he shall deliver to counsel for Trustee in bankruptcy his Federal income tax returns for the years 1973, 1974 and 1975." Therefore, the issue presented to this court is whether Heitzinger, by disclosing the existence and location of his tax returns, coupled with an agreement to bring them to court in accordance with a subpoena duces tecum, waived his Fifth Amendment right against producing them for examination by the trustee of the bankruptcy estate.

## II.

The Fifth Amendment "not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal . . . ." *Lefkowitz v. Turley*, 414 U.S. 70, 77, 94 S.Ct. 316, 322, 38 L.Ed.2d 274 (1973); *Baxter v. Palmigiano*, 425 U.S. 308, 316, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976). Therefore, a person may invoke his Fifth Amendment privilege as to any evidence which he reasonably believes will incriminate him in a criminal prosecution. *Maness v. Meyers*, 419 U.S. 449, 461, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975); *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). This privilege applies to his papers, his effects,

and protects him from being compelled either to produce or authenticate them, if to do so would incriminate him. However, the privilege may be lost by a voluntary disclosure of incriminating facts. For example, in *Rogers v. United States*, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951), petitioner testified before a grand jury that she had been the Treasurer of the Communist Party of Denver, that she had been in possession of the organization's membership list and dues record until January 1948, but had turned them over to another. When asked to identify that other person, she refused to answer. Affirming a sentence for contempt, the Court held that her refusal was not justified in view of prior testimony in which she admitted incriminating facts concerning her relation with the Communist Party. Consequently, the Court applied the rule that where incriminating facts are voluntarily revealed, the privilege against self-incrimination cannot be invoked to avoid disclosure of the details. 340 U.S. at 373, 71 S.Ct. 438. In so holding, the court noted that the requirement of full disclosure rested, not on the notion of waiver, but on the principle that in such instances the question is whether there is "a reasonable danger of further incrimination in light of all the circumstances, including any prior disclosures." 340 U.S. at 374, 71 S.Ct. at 442.

Whether the privilege is lost because of testimony which can be termed a knowing and intelligent waiver, one otherwise classified, or testimony which can be called disclosure without compulsion,[3] it is clear that once a person has revealed an incriminating fact, requiring him to make other disclosure on the same matter, without further incrimination, does not conflict with the interests protected by the Fifth Amendment. This principle of constitutional law is a recognition of the pragmatic fact that when a person testifies, he will often give responses he feels will not incriminate him, but will refuse to answer related questions when he feels that the interrogation is leading him into the area of incrimination. This being so, when a person invokes the Fifth Amendment, he may still be required to testify selectively. "A blanket refusal to testify is unacceptable. A court must make a particularized inquiry, deciding, in connection with each specific area that the questioning party wishes to explore, whether or not the privilege is well founded." *United States v. Melchor Moreno*, 536 F.2d 1042, 1049 (5th Cir. 1976); *see Hoffman v. United States*, 341 U.S. 479, 486–87, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). Hence, a balance must be struck to allow selective testimony and thus preserve the privilege without permitting the person to refuse disclosure of details where there is no likelihood of further incrimination. If a disclosure by a witness is not of an incriminating nature, he cannot be compelled to answer additional or other related questions which would in fact incriminate him. *Arndstein v. McCarthy*, 254 U.S. 71, 41 S.Ct. 26, 65 L.Ed. 138 (1920); *McCarthy v. Arndstein*, 262 U.S. 355, 43 S.Ct. 562, 67 L.Ed. 1023 (1923); *see* McCormick, *Evidence* § 140 at 296–98 (2d ed. 1972). Furthermore, "[a]n ordinary witness may 'pick the point beyond which he will not go' and refuse to answer any questions about a matter already discussed, even if the facts already revealed are incriminating, so long as the answers sought may tend to *further* incriminate him." *In re Master Key Litigation*, 507 F.2d 292, 294 (9th Cir. 1974); *Shendal v. United States*, 312 F.2d 564, 566 (9th Cir. 1963).

### III.

In this case Joseph A. Heitzinger was subpoenaed to appear as a witness for examination concerning his knowledge of the affairs of the involuntary bankrupt, Bon Voyage Travel Agency, Inc. He was president of the bankrupt, and its sole stockholder. It is conceded by the bankrupt's trustee that in these proceedings Heitzinger was protected from self-incrimination by the Fifth Amendment. He obeyed the direction of the subpoena that he bring to court with him his tax returns for the years 1973–1975. It happened that on October 28, 1976 he had left these at home;

---

3. *See Garner v. United States*, 424 U.S. 648, 654 n. 9, 96 S.Ct. 1178, 47 L.Ed.2d 370 (1976).

and he promised that if the court continued the matter, he would "bring them next time." In fact, since he was under the compulsion of a subpoena duces tecum, he could not have given any other answer to the bankruptcy judge because one cannot ignore a process for the production of documents even where they are privileged. 5A Moore's Federal Practice ¶ 45.05[1] (2d ed. 1976). It is true, as the bankruptcy judge concluded, that Heitzinger's agreement to bring his tax returns to court was voluntarily and knowingly made with the advice of his counsel. However, neither at any of the prior dates nor during the continued examination had Heitzinger testified concerning the content of the tax returns. When he appeared at the continued date, as he had said he would "bring them next time . .," he had the returns with him. When he was asked to surrender them to counsel for the trustee, he responded by saying that on the advice of his lawyer he was pleading the Fifth Amendment against producing the returns and thus disclosing their contents which he believed would incriminate him. This he had the right to do. *Arndstein v. McCarthy*, 254 U.S. 71, 41 S.Ct. 26, 65 L.Ed. 138 (1920); *McCarthy v. Arndstein*, 262 U.S. 355, 43 S.Ct. 562, 67 L.Ed. 1023 (1923). His agreement to bring the returns to court, and thus comply with the subpoena duces tecum, was not a waiver of his constitutional right to be free from self-incrimination. *Compare Isaacs v. United States*, 256 F.2d 654 (8th Cir. 1958). For these reasons, this court concludes that Heitzinger's refusal to surrender his tax returns was not conduct prohibited by 11 U.S.C. § 69(a). Therefore, the rule to show cause is discharged, the order concluding that Heitzinger's conduct concerning the tax returns was contempt, and certifying the fact, is vacated. This cause is remanded to the bankruptcy court for further proceedings not inconsistent with the views expressed in this memorandum.