In re Earl D. WILSON a/k/a Earl
Wilson, Debtor.

William L. DAVIS, Substitute
Trustee, Plaintiff,

v.

Earl D. WILSON, Defendant.

FEDERAL DEPOSIT INSURANCE
CORPORATION, Plaintiff,

v.

Earl D. WILSON a/k/a Earl
Wilson, Defendant.

Bankruptcy No. 3–83–00848.

Adv. Nos. 3–84–0149, 3–84–0347.

United States Bankruptcy Court,
E.D. Tennessee.

July 9, 1985.

Heiskell, Donelson, Bearman, Adams,
Williams & Kirsch, William S. Lockett, Jr.,
Knoxville, Tenn., for plaintiff Davis.

Morton, Lewis, King & Krieg, Deborah
C. Stevens, Knoxville, Tenn., for plaintiff
Federal Deposit Ins. Corp.

Cecil D. Branstetter, Nashville, Tenn.,
Stephen C. Zachary, Cleveland, Tenn., for
defendant.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

At issue is whether the debtor waived
the Fifth Amendment privilege against
self-incrimination by voluntarily answering
questions posed during two discovery depo-
sitions taken in his bankruptcy case prior
to commencement of the instant adversary
proceedings.[1]

### I

Three bank creditors filed an involuntary
chapter 7 petition against the debtor on
May 26, 1983. Sustaining the petition, the
court entered an order for relief on August
3, 1983. On April 9, 1984, the original
trustee filed a complaint objecting to debt-
or's discharge.[2] Federal Deposit Insurance
Corporation (FDIC) also filed a complaint,
on November 21, 1984, objecting to debt-
or's discharge. The court has consolidated
these two objections to discharge.

During his deposition on April 11, 1985,
the debtor identified himself and gave his
address. In response to all other questions
asked by FDIC's attorney the debtor as-
serted the Fifth Amendment privilege

1. The issue of the validity in the first instance of
the privilege claim is not before the court.

2. Pursuant to an agreed order entered on Janu-
ary 11, 1985, William L. Davis, successor to the
original trustee, has been substituted as the
plaintiff in Adv.Proc. No. 3–84–0149.

against self-incrimination. Contending debtor waived the privilege by testifying during prior deposition proceedings, FDIC has filed a motion to compel him to fully answer questions asked during the April 11th deposition. Debtor maintains he has not waived the privilege against self-incrimination because his previous testimony did not incriminate, nor provide information that would incriminate, him. Further, debtor asserts that FDIC already has, or has access to, all the information it could get if the debtor answered its questions.

## II

The Fifth Amendment recites in part: "No person shall be ... compelled in any criminal case to be a witness against himself...." U.S. Const. amend. V. The amendment protects an individual from self-incriminating disclosures in civil as well as criminal proceedings. *McCarthy v. Arndstein,* 266 U.S. 34, 40, 45 S.Ct. 16, 17, 69 L.Ed. 158 (1924); *Counselman v. Hitchcock,* 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110 (1892).

In *Arndstein v. McCarthy,* 254 U.S. 71, 41 S.Ct. 26, 65 L.Ed. 128 (1920), a habeas corpus proceeding, Arndstein, an involuntary bankrupt, refused to answer the questions of a panel of special commissioners on the basis of the privilege against self-incrimination. The district court upheld Arndstein's assertion of the privilege. Subsequent to examination by the special commissioners Arndstein filed bankruptcy schedules itemizing his assets and liabilities. When questioned about information in the schedules Arndstein declined to answer, asserting the privilege against self-incrimination. Concluding Arndstein had waived the privilege by filing schedules without objection, the district court adjudged him guilty of contempt of court and committed him to the custody of the marshal for confinement. In reversing the district court judgment, the Supreme Court stated:

> The schedules, standing alone, did not amount to an admission of guilt or furnish clear proof of crime, and the mere filing of them did not constitute a waiver of the right to stop short whenever the bankrupt could fairly claim that to answer might tend to incriminate him.

*Arndstein v. McCarthy,* 254 U.S. at 72, 41 S.Ct. at 26.

On remand the district court sustained the writ of habeas corpus. The case returned to the Supreme Court when the marshal appealed. Affirming the order discharging Arndstein from custody, the Court said:

> [W]here the previous disclosure by an ordinary witness is not an actual admission of guilt or incriminating facts, he is not deprived of the privilege of stopping short in his testimony whenever it may fairly tend to incriminate him. And although there is some conflict of authority as to the application of this rule ... it ... should be applied to the involuntary examination of a bankrupt where he is practically in the position of a witness under cross-examination. And since we find that none of the answers which had been voluntarily given by Arndstein ... amounted to an admission or showing of guilt, we are of opinion that he was entitled to decline to answer further questions when so to do might tend to incriminate him.

*McCarthy v. Arndstein,* 262 U.S. 355, 359–60, 43 S.Ct. 562, 563–64, 67 L.Ed. 1023 (1923).[3]

*Rogers v. United States,* 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951), a landmark decision on testimonial waiver of the privilege against self-incrimination, involved a contempt citation arising out of a grand jury investigation. Petitioner testified she had been treasurer of the Communist Par-

---

**3.** *But cf. Brown v. United States,* 356 U.S. 148, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958) where the Court held that the defendant's voluntary testimony in a denaturalization proceeding subjected her to a full range of cross-examination, even though her testimony on direct neither amounted to an admission of guilt nor furnished proof of a crime. The majority of the Court was clearly concerned about permitting a witness to testify on direct, putting matters into dispute, and then asserting immunity from cross-examination.

ty of Denver and that she formerly possessed membership lists and dues records of the party. Asserting the privilege against self-incrimination, petitioner refused to identify the person to whom she had turned over those records. A sharply divided Court affirmed the finding of contempt, concluding that "disclosure of acquaintance with her successor presents no more than a 'mere imaginary possibility' of increasing the danger of prosecution." *Rogers*, 340 U.S. at 374–75, 71 S.Ct. at 442–43 (footnotes omitted). Though often cited for the proposition that disclosure of a fact waives the privilege against self-incrimination as to the details, the critical inquiry for the majority in *Rogers* was whether the question to petitioner "presented a reasonable danger of further crimination in light of all the circumstances, including any previous disclosures." *Rogers*, 340 U.S. at 374, 71 S.Ct. at 442. The Court was also concerned that sustaining the privilege assertion might invite a distortion of the facts "by permitting a witness to select any stopping place in the testimony." *Rogers*, 340 U.S. at 371, 71 S.Ct. at 441.

The two-factor approach emerging from *Rogers*—distortion of the facts and absence of further incrimination—has been criticized as too indefinite. See Note, *Testimonial Waiver of the Privilege Against Self-Incrimination*, 92 Harv.L.Rev. 1752 (1979). At least one court has expressly rejected the "further incrimination" test for testimonial waiver, holding instead:

> [T]hat a testimonial waiver of a witness' fifth amendment privilege against self-incrimination occurs only when (1) the witness has made an incriminating, testimonial statement; (2) that statement creates a significant likelihood that, absent further testimony, the finder of fact will be left with and prone to rely on a distorted version of the truth stemming from the earlier testimony; and (3) the witness had reason to know that the statement would create such a distortion.

*E.F. Hutton & Co. v. Jupiter Dev. Corp.*, 91 F.R.D. 110, 116–17 (S.D.N.Y.1981). *Accord Klein v. Harris*, 667 F.2d 274 (2d Cir.1981). *Klein* provides that in deciding whether to infer waiver a court should apply a two-prong test: (1) do the witness' prior statements create a significant likelihood the finder of fact will be presented with a distorted view of the truth, and (2) did the witness have reason to know his prior statements would be interpreted as a waiver of the privilege against self-incrimination. As to the second prong, reason to know should be found only where the witness' prior statements were both testimonial and incriminating. *Klein*, 667 F.2d at 288.

### III

Claiming the privilege against self-incrimination, the debtor has declined to answer FDIC's questions about: property allegedly fraudulently transferred; personal or joint bank accounts; bank loans to partnerships, joint ventures, or corporations in which debtor is believed to have had an interest; his interest in, and the assets of, more than fifty entities and the whereabouts of books and records of those entities; and his business relationship with a dozen individuals. Debtor's prior deposition testimony includes answers on some of these subjects.

According to his attorney, debtor has been notified that he is a target of a grand jury investigation, and he has been offered a plea bargain agreement. However, there is no evidence or statement in the record before this court specifying, or even generally describing, the anticipated criminal charges against the debtor. Absent knowledge of the alleged criminal violations and surrounding facts, it is impossible to determine whether debtor's prior testimony includes incriminating statements. His prior testimony does not include any express admission of a criminal violation or disclosure of information which, to this court, is patently self-incriminating.

Since the present record is insufficient to support a finding of testimonial waiver of the privilege against self-incrimination, the FDIC motion to compel answers on the theory of waiver shall be denied.