**In re A & L OIL CO., INC., Debtor.**

**Steven TEITELMAN, Chapter 11 Trustee for the Bankruptcy Estate of A & L Oil Co., Inc., Plaintiff,**

**v.**

**DALE PETROLEUM CORP., a New Jersey Corporation, Alfred Dale, Jr. and Veronica Dale, Defendants.**

Bankruptcy No. 95–37612.
Adv. No. 96–3087.

United States Bankruptcy Court,
D. New Jersey.

Aug. 15, 1996.

As Amended Aug. 28, 1996.

Nancy Isaacson, Epstein, Epstein, Brown & Bosek, Chatham, New Jersey, for Plaintiff.

Stephen H. Skoller, Philomena McArthur, Lampf, Lipkind, Prupis, Petigrow & LaBue, West Orange, New Jersey, for Defendants.

Salvatore A. Paparone, Jr., Paparone & Associates, Philadelphia, .Pennsylvania, for Unsecured Creditors' Committee.

## MEMORANDUM OPINION

STEPHEN A. STRIPP, Bankruptcy Judge.

This is the court's decision on a motion by plaintiff Steven Teitelman (hereinafter "trustee") to compel defendant Alfred Dale, Jr. (hereinafter "Mr. Dale") to continue with his testimony at a deposition in this adversary proceeding. After the initial day of testimony, Mr. Dale refused to answer most additional questions on the grounds of his Fifth Amendment privilege against self-incrimination. The trustee argues on this mo-

tion that Dale waived that privilege by his prior testimony, and seeks to compel the continuation of testimony. This court has jurisdiction under 28 U.S.C. §§ 1334(b), 157(a) and 151. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A); (E) and (O). The following shall constitute the court's findings of fact and conclusions of law.

## FINDINGS OF FACT

A & L Oil Co., Inc. (hereinafter "A & L" or "the debtor") filed a petition for relief under chapter 11 of title 11, United States Code (hereinafter "Bankruptcy Code" or "Code") on October 26, 1995. Shortly thereafter, the court directed the appointment of a chapter 11 trustee and Steven Teitelman was appointed. On March 14, 1996, the trustee filed an adversary proceeding against Alfred Dale, Jr., Veronica Dale and Dale Petroleum Corp. (collectively "the Dales") alleging that they converted property of the debtor. The debtor was a wholesale distributor of gasoline to service stations. Dale Petroleum Corp. delivered gasoline for the debtor. The verified complaint alleges that the Dales converted payments for 47 loads of gasoline, totaling approximately $353,000.00, by failing to turn the payments over to the debtor. In addition to recovery of that, the complaint seeks to enjoin transfer of the Dales' assets.

In connection with the adversary proceeding, counsel for the trustee commenced an examination of Mr. Dale by deposition under Fed.R.Bankr.P. 2004 on March 13, 1996. Mr. Dale was represented by Guy R. Wilson, Esq. At the examination, Mr. Dale produced many corporate and personal documents, including bank statements, canceled checks, various certificates of title, financial statements of Dale Petroleum, tax returns and insurance policies. He also testified about numerous business and personal matters, including his employment relationship with A & L, his and Dale Petroleum's loan arrangement with the debtor, the diversion of oil deliveries to Wally's Gulf using Dale Petroleum as a conduit, and the assets and opera-

tions of Dale Petroleum. Mr. Dale testified freely without asserting a Fifth Amendment privilege.

After Mr. Dale testified for several hours, the examination ended and was scheduled to continue on March 20, 1996. Mr. Wilson contacted the trustee's counsel shortly before the March 20th examination was scheduled to begin and informed her that Mr. Dale would not be attending because Mr. Wilson had not heard from his client. Thereafter, Steven Skoller, Esq. contacted the trustee's attorney and told her that he now represented the Dales and agreed to produce Mr. Dale on April 11, 1996.

On April 11, 1996, Mr. Dale appeared with his attorney at the continued Rule 2004 examination and asserted the Fifth Amendment privilege to almost all questions asked by the trustee's attorney. Mr. Dale has refused to submit to any further examination. On or about June 12, 1996, the trustee filed this motion to, *inter alia,* compel Alfred Dale to continue with a Rule 2004 examination and for a determination that he has waived his Fifth Amendment privilege against self-incrimination.[1] The trustee alleges that Mr. Dale waived his right to assert the privilege because he failed to assert it at the examination on March 13, 1996.

Mr. Dale contends that he can assert the privilege because it has not been waived. Mr. Dale argues that he did not knowingly and intelligently waive his Fifth Amendment right by testifying at the March 13, 1996 examination because he was never informed by his attorney that he had such a right. Moreover, he asserts that he only became aware of possible criminal ramifications after he completed his testimony.

## CONCLUSIONS OF LAW

 The Fifth Amendment provides in pertinent part that "[n]o person ... shall be compelled in any criminal case to be a witness against himself...." U.S. CONST. amend. V. The privilege against self-incrimi-

---

**1.** The examination on March 13, 1996 was under Fed.R.Bankr.P. 2004 because it was conducted before this adversary proceeding was filed. The testimony which the trustee now seeks is actually under Fed.R.Bankr.P. 7030, however, because it relates to matters which are the subject of an adversary proceeding.

nation may be invoked whether the response would itself support a criminal conviction or the response would provide a link in the chain of evidence required to prosecute. *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). The privilege applies to both civil and criminal matters. *Kastigar v. United States,* 406 U.S. 441, 444, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972). The witness can refuse to testify in a civil proceeding if his testimony can incriminate him or her in a future criminal matter. *Lefkowitz v. Turley,* 414 U.S. 70, 77, 94 S.Ct. 316, 322, 38 L.Ed.2d 274 (1973). The Fifth Amendment privilege extends to bankruptcy proceedings. *McCarthy v. Arndstein,* 266 U.S. 34, 45 S.Ct. 16, 69 L.Ed. 158 (1924); *In re Martin–Trigona,* 732 F.2d 170, 175 (2d Cir.1984), *cert. denied,* 469 U.S. 859, 105 S.Ct. 191, 83 L.Ed.2d 124 (1984).

■ It is the court's duty to decide whether a witness' silence is justified and to require him to answer if it appears that the witness is improperly asserting the privilege. *Hoffman,* 341 U.S. at 486, 71 S.Ct. at 818. The witness must have reasonable cause to apprehend a real danger of incrimination to validly assert the privilege. *Id.* "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Id.* at 486–87, 71 S.Ct. at 818.

In the present case, the trustee is not arguing that Mr. Dale has improperly asserted the privilege. In fact, the trustee's counsel believed that the debtor's disclosures at the March 13, 1996 examination created a threat of prosecution because she told Mr. Wilson at the end of the deposition that she would be forwarding the matter to the U.S. Trustee's Office for criminal referral. Instead, the trustee claims that Mr. Dale has waived his right to assert the privilege because he has already provided incriminating testimony at the deposition on March 13, 1996. The issue for this court to decide is whether Mr. Dale has lost his right to assert the Fifth Amendment privilege against self-incrimination regarding the matters which were the subject of his March 13th deposition.

■ The privilege against self-incrimination may be lost unless it is invoked. *Garner v. United States,* 424 U.S. 648, 653, 96 S.Ct. 1178, 1181–82, 47 L.Ed.2d 370 (1976); *Rogers v. United States,* 340 U.S. 367, 371, 71 S.Ct. 438, 440–41, 95 L.Ed. 344 (1951). Waiver is only one of several manners in which the privilege may be lost. *Garner v. United States,* 424 U.S. at 654 n. 9, 96 S.Ct. at 1182 n. 9. It is well settled that "[t]he [Fifth] Amendment speaks of compulsion. It does not preclude a witness from testifying voluntarily in matters which may incriminate him. If, therefore, he desires the protection of the privilege, he must claim it or he will not be considered to have been 'compelled' within the meaning of the Amendment." *Minnesota v. Murphy,* 465 U.S. 420, 427, 104 S.Ct. 1136, 1142, 79 L.Ed.2d 409 (1984) (quoting *United States v. Monia,* 317 U.S. 424, 427, 63 S.Ct. 409, 410–11, 87 L.Ed. 376 (1943)). Once a witness voluntarily reveals incriminating facts, that individual may not invoke the privilege to avoid disclosing the details of those facts. *Rogers,* 340 U.S. at 373, 71 S.Ct. at 442. Thus, the witness must disclose those details which are relevant to the incriminating facts previously revealed. *Id.*

■ Although the Fifth Amendment privilege against self-incrimination may be waived by a witness' prior statements, a testimonial waiver will not be lightly inferred. *Smith v. United States,* 337 U.S. 137, 150, 69 S.Ct. 1000, 1007, 93 L.Ed. 1264 (1949). Accordingly, the court must indulge every reasonable presumption against finding testimonial waiver. *Emspak v. United States,* 349 U.S. 190, 198, 75 S.Ct. 687, 692, 99 L.Ed. 997 (1955).

Research has not discovered any opinion from the U.S. Court of Appeals for the Third Circuit or from the District of New Jersey setting forth any test for determining whether a testimonial waiver has occurred. The Second Circuit, however, has promulgated a two-prong test. *Klein v. Harris,* 667 F.2d 274, 287 (2d Cir.1981). Mr. Dale argues that

the *Klein* test should be adopted. In *Klein*, the court determined that:

> ... [a] court should only infer a waiver of the fifth amendment's privilege against self-incrimination from a witness' prior statements if (1) the witness' prior statements have created a significant likelihood that the finder of fact will be left with and prone to rely on a distorted view of the truth, and (2) the witness had reason to know that his prior statements would be interpreted as a waiver of the fifth amendment privilege against self-incrimination.

*Id.* A number of bankruptcy courts have adopted this test when determining whether a witness has waived the privilege. *See e.g., In re Donald Sheldon & Co., Inc.,* 193 B.R. 152, 162 (Bankr.S.D.N.Y.1996); *In re Werer,* 1992 WL 167625, Civ.A. No. 91B10816 at *3 (Bankr.N.D.Ill. July 7, 1992); *Matter of Scarfia,* 104 B.R. 462, 463–64 (Bankr. M.D.Fla.1989), *appeal denied,* 129 B.R. 671 (M.D.Fla.1990); *In re Mudd,* 95 B.R. 426, 429–30 (Bankr.N.D.Tex.1989); *In re Hulon,* 92 B.R. 670, 673–74 (Bankr.N.D.Tex.1988); *In re Wilson,* 50 B.R. 701, 703 (Bankr. E.D.Tenn.1985).

Analysis of *Klein* and the cases which follow it in the light of the Supreme Court cases on loss of the privilege, however, leads this court to conclude that *Klein* improperly adds elements to the Supreme Court test. As previously noted, the Supreme Court stated flatly in *Rogers* that "... where criminating facts have been voluntarily revealed, the privilege cannot be invoked to avoid disclosure of the details." *Id.,* 340 U.S. at 373, 71 S.Ct. at 442. The Supreme Court jurisprudence on this issue has not subsequently limited the holding of *Rogers* by finding a loss of the privilege, as in *Klein,* only where the witness' prior statements have created a significant likelihood that the finder of fact will be left with a distorted view of the truth.

The second prong of the *Klein* test creates a similar problem. It holds that a waiver of the privilege will be found only if the witness had reason to know that his prior statements would be interpreted as such a waiver. The Supreme Court has held, however, that "an individual may lose the benefit of the privilege without making a knowing and intelli-

gent waiver." *Garner,* 424 U.S. at 654 n. 9, 96 S.Ct. at 1182 n. 9 (citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 222–27, 93 S.Ct. 2041, 2045–48, 36 L.Ed.2d 854 (1973)). This court therefore concludes that *Klein* erred as well in requiring that the witness have reason to know that his statements would be interpreted as a waiver for a loss of the privilege to be found. Reliance on *Klein* enabled Mr. Dale to argue in this case that because his prior counsel allegedly wasn't knowledgeable in criminal law and failed to advise him of the privilege, it wasn't lost. If that was the test, loss of the privilege by means other than a waiver might never be found. As noted above, however, *Garner* held that a privilege can be lost without waiver. And one of the ways in which it can be lost is by voluntarily revealing criminating facts. *Rogers, supra.* This court therefore declines to follow *Klein.*

■ The court must determine whether Mr. Dale has voluntarily revealed criminating facts, because if he did not, the privilege against self-incrimination wasn't lost. Mr. Dale testified in his deposition that he was involved in a practice in which gasoline purchased by the debtor was delivered to a service station with the sale proceeds diverted to a third party. March 13, 1996 depos. trans. 70:1–75:12. The verified complaint in this case asserts that from 1993 through 1995 the Dales converted approximately $353,-000.00 in this manner. The defendants' counsel acknowledged at the hearing on July 2, 1996 that the allegations regarding the scheme in question could if proven constitute the crime of theft by deception, N.J.S.A. 2C:20–4, theft by failure to make proper disposition of property received, N.J.S.A. 2C:20–9, and possibly other forms of theft. The court agrees and therefore concludes that the facts as to which Dale testified may be incriminating. Since he voluntarily revealed those facts, the court holds that he lost the privilege against self incrimination and he may not invoke it to avoid disclosure of the details. *Rogers,* 340 U.S. at 373, 71 S.Ct. at 442.

## CONCLUSION

For these reasons, the trustee's motion to compel Mr. Dale to continue to testify re-

garding the matters in question is granted. The trustee shall submit an order to that effect within seven days under D.N.J.Bankr. Ct.R. 4(c). ·