## In re ANTHRACITE COAL ANTITRUST LITIGATION.*

### M.D.L. No. 293.

United States District Court,
M. D. Pennsylvania.

March 23, 1979.

\* This document relates to:  all actions.

Arthur J. Galligan, David I. Shapiro, Dickstein, Shapiro & Morin, Washington, D. C., for plaintiff State of New York.

Lee A. Freeman, Sr., D. Alan Harris, Freeman, Rothe, Freeman & Salzman, Chicago, Ill., John L. Shearburn, Norman J. Watkins, Deputy Attys. Gen., Edward G. Biester, Jr., Acting Atty. Gen., Pennsylvania Dept. of Justice, Harrisburg, Pa., for plaintiff Commonwealth of Pennsylvania.

Daniel H. Margolis, James H. Kelley, Daniel R. Chemers, Robert W. Devos, Jr., Jamienne S. Studley, Gary J. Smith, Berg-

366

son, Borkland, Margolis & Adler, Washington, D. C., A. Grant Sprecher, Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, Pa., for plaintiff Great Lakes Carbon Corp. and Aluminum Co. of America.

Michael M. Baylson, Duane, Morris & Heckscher, Philadelphia, Pa., for plaintiff Allied Chemical Corp.

Edward F. Mannino, John F. Stoviak, Karen Marek McAlinn, Mark J. Levin, Hope A. Comisky, Dilworth, Paxson, Kalish, Levy & Kauffman, Philadelphia, Pa., Vincent B. Makowski, Lark, Makowski, Marateck & Konopka, Shamokin, Pa., Morey M. Myers, Gelb & Myers, Scranton, Pa., for Reading defendants.

Edwin P. Rome, Richard P. McElroy, Frederica Massiah-Jackson, Goncer M. Krestal, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for Greenwood defendants; Curtis H. Barnette, Kathleen M. Mills, Bethlehem, Pa., of counsel.

OPINION

MUIR, District Judge.

These related anthracite coal antitrust actions have been assigned to the undersigned judge for the purpose of conducting pre-trial proceedings. On February 1, 1979, Plaintiffs filed a motion for sanctions against Defendants Reading Anthracite Coal Company, Reading Anthracite Company, and Lehigh Valley Coal Sales Company (the Reading Defendants) accompanied by a memorandum and filed a similar motion for sanctions against Defendants Greenwood Stripping Corp., Greenwood Mining Company, Lehigh Navigation-Dodson, and Pocono Fuels, Inc. (the Greenwood Defendants). On February 16, 1979, both sets of Defendants filed briefs in opposition to the motions for sanctions. The Plaintiffs filed a reply brief on February 23, 1979 with respect to the former motion and on the same day filed an affidavit of counsel relating to that motion pursuant to Local Rule of Court 301.02(e). A supplemental affidavit of counsel was filed on February 26, 1979 and on the same day the Plaintiffs' reply brief and affidavit of counsel relating to the mo-

tion for sanctions against the Greenwood Defendants were filed. The affidavits indicate that the matters raised by the two motions have not been resolved by counsel.

The instant motions for sanctions arise out of opinions and orders issued by this Court in the above cases on January 2, 1979 and January 9, 1979 granting in part motions to compel discovery filed by the Plaintiffs. The Plaintiffs had, by notice of deposition dated September 26, 1978, requested the corporate Defendants involved in these motions to designate a person pursuant to F.R.Civ.P. 30(b)(6) to appear at a deposition and to testify concerning the corporations' knowledge of certain matters contained in the notice of deposition, including a meeting between officers of the Defendants and other coal producing, mining or marketing organizations which allegedly occurred at Brutico's Restaurant in Old Forge, Pennsylvania in 1966 or 1967, communications about prices between or among competitors occurring at or after meetings of the Anthracite Producers' Advisory Board, and other such price communications. However, when the depositions were conducted, it became apparent that the persons so designated had failed to attempt to elicit information from the following persons about the matters contained in the notice of deposition although both Plaintiffs and Defendants appear to agree that those persons have knowledge which is relevant: Raymond H. Cairnes, currently vice-president of Reading Anthracite Coal Co., Ronald J. Ulmer, currently vice-president of Reading Anthracite Co., and Reading Anthracite Coal Co., and James J. Tedesco, currently president of Lehigh Valley Coal Sales, for the Reading Defendants and Foster Frable currently General Sales Manager of the Raw Materials Sales Division of Bethlehem Steel Corp., which purchased the Greenwood Defendants in 1974, for the Greenwood Defendants. In its orders, the Court directed that new Rule 30(b)(6) depositions be convened and that the persons designated by the Defendants to appear at those depositions make a good faith effort prior to that time to marshal all the information in the possession of the respective corpora-

tions with respect to the subjects stated above and in particular to indicate to the Plaintiffs that they inquired of the above-named persons concerning their knowledge of the matters set forth in the notice of deposition and what response, if any, was given. Renewed notices of deposition were served by the Plaintiffs. On January 18, 1979 James Muntone was deposed on behalf of Reading Anthracite Company and Reading Anthracite Coal Company. On January 22, 1979, Anthony Cammarota was deposed on behalf of Lehigh Valley Coal Sales and Bernard F. Mulligan testified for the Greenwood Defendants on January 26, 1979. Transcripts of all those depositions have been supplied to the Court by the Plaintiffs. Two facts which are germane to the instant motions for sanctions appear from the testimony given at those depositions. First, all inquiries to Raymond H. Cairnes, Ronald J. Ulmer, James J. Tedesco, and Foster Frable concerning the subject matter of the depositions proved fruitless because of those persons' invocation of their Fifth Amendment privilege against self-incrimination. Second, little or no investigation other than the inquiry directed to those persons was conducted by Messrs. Muntone, Cammarota, and Mulligan prior to their scheduled depositions. The Plaintiffs contend that these facts indicate that the Defendants failed to make a good faith effort to comply with the terms of this Court's orders of January 2, 1979 and January 9, 1979 and that judgment by default should be entered against them for their failure to comply with discovery orders. In the alternative the Plaintiffs suggest that less severe sanctions should be imposed such as deeming the allegations of the Plaintiffs' complaint which are covered by the September 26, 1978 notice of deposition to be admitted by the Defendants or precluding the Defendants from introducing evidence relating to those allegations.

The Plaintiffs' motions may be read as asserting essentially two basic positions. First, the Plaintiffs contend that regardless of the fact that Messrs. Cairnes, Ulmer, Tedesco, and Frable invoked their Fifth Amendment privilege when asked about the subject matter of the notice of deposition by the witnesses who were deposed, those witnesses and their respective corporations failed to comply with this Court's order because the Court directed them specifically to marshal all the information in the possession of their respective corporations and that other means should have been utilized in order to fulfill the terms of this Court's order such as conducting an independent investigation into files and other documentary evidence and inquiring of persons in the hierarchy of the corporations other than those listed in this Court's order whether they had knowledge of the matters specified in the notice of deposition. Secondly, the Plaintiffs assert that because this Court held in its January 2, 1979 and January 9, 1979 opinions that knowledge possessed by Messrs. Cairnes, Ulmer, Tedesco, and Frable which was gathered while they acted within the scope of their corporate employment is as a matter of law the knowledge of the corporation, because the Defendants have failed to make that information available to the Plaintiffs they have failed to fulfill their discovery obligations even if the individuals involved have refused to disclose that knowledge to representatives of the corporation. The Court will deal with each of these contentions *seriatim.*

With respect to the Plaintiffs' first contention, the Court is not convinced that sanctions are appropriate for the failure of the witnesses who appeared at the Rule 30(b)(6) depositions to conduct a more extensive inquiry into the subjects covered by the September 26, 1978 notice of deposition. The Plaintiffs are correct when they assert that this Court's orders contemplated that Messrs. Muntone, Cammarota and Mulligan would testify not only about the inquiries which they made of Messrs. Cairnes, Ulmer, Tedesco, and Frable but also would reveal to the Plaintiffs any other knowledge which their respective corporations possessed which was relevant to the subject matter of the depositions. The strength of the Plaintiffs' assertion that the witnesses did not comply with the Court's order because they failed to conduct any other investigation

concerning the amount of knowledge which their corporations had, however, is undermined by the Defendants' assertion that all matters within the knowledge of the Defendant corporations other than what is known by their officers who have invoked their Fifth Amendment privilege against self-incrimination has already been disclosed to the Plaintiffs. It is the Defendants' position that a further investigation would not have revealed any more evidence than that which has already been disclosed and therefore that the failure of Messrs. Muntone, Cammarota and Mulligan to conduct such an investigation did not represent a willful refusal to comply with the terms of this Court's orders.

Any order imposing sanctions on the Defendants for failure to comply with the discovery orders must be preceded by a finding that the Defendants have acted willfully or in bad faith so as to obstruct the discovery by the Plaintiffs. The Court is convinced based both upon statements made by liaison counsel for the Defendants at the depositions which were conducted pursuant to this Court's orders of January 2 and January 9, 1979 and the position taken by the Defendants in their briefs that they believed that all that was required to comply with the Court's orders was to pass on to the Plaintiffs the responses of Messrs. Cairnes, Ulmer, Tedesco and Frable to questions regarding the subject matter of the September 26, 1978 notice of deposition. The failure of the witnesses who appeared at the Rule 30(b)(6) depositions to inquire of those four individuals whether they had any knowledge concerning those matters was the central issue of the Plaintiffs' earlier motion to compel discovery. Consequently, based upon the Defendants' assertion that further investigation by Messrs. Muntone, Cammarota and Mulligan would not have produced any discoverable evidence which has not been revealed to the Plaintiffs and the Defendants' belief that they were complying with this Court's orders, sanctions will not be imposed for the failure of the Rule 30(b)(6) witnesses to conduct an investigation more extensive than that which they undertook prior to the date of their depositions.

The Court must now consider whether it is proper to impose sanctions on the Defendant corporations for the failure of Messrs. Cairnes, Ulmer, Tedesco and Frable to disclose to representatives of their corporations for purposes of attending Rule 30(b)(6) depositions the knowledge which they had concerning the alleged price-fixing conspiracy in this case, including a meeting which occurred at Brutico's Restaurant in 1966 or 1967, meetings of the Anthracite Producers Advisory Board, and any other communications between or among competitors concerning prices. The Defendants assert that such sanctions may not be imposed because if this Court were to penalize the Defendant corporations in some manner, an economic detriment would be visited upon those corporate officials who have invoked their privilege against self-incrimination and the assertion of the Fifth Amendment privilege should not be rendered costly. *See, e.g., Spevack v. Klein*, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967); *Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). It is the Court's view, however, that the Fifth Amendment poses no barrier to the imposition of sanctions in this case. Were the Court to rule otherwise, it would be giving the Defendant corporations the benefit of a Fifth Amendment privilege where none exists. It is well-settled that a corporation does not enjoy the right not to incriminate itself. *Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946). However, if officers of a corporation invoke their individual Fifth Amendment privileges and as a result conceal from other parties information which rightly belongs to the corporation and no penalties are visited upon the corporation itself for the failure to disclose information which it possesses, the effect would be the same as if the corporation had a Fifth Amendment privilege. The issue posed by the Plaintiffs' motion for sanctions is very similar to that raised in *George Campbell Painting Corp. v. Reid*, 392 U.S. 286, 88 S.Ct. 1978, 20 L.Ed.2d 1094 (1968). In that case, the Court con-

sidered whether a particular provision of New York law requiring that a clause be inserted in all public contracts which provided that upon refusal of a person to testify before a grand jury, to answer any relevant question, or to waive immunity against subsequent criminal prosecution, his firm would be disqualified for five years from entering into public contracts violated the Fifth Amendment of United States Constitution. Although the two justices who dissented in that case asserted that a penalty imposed upon a corporation was simply a collateral means of reaching the economic interest of recalcitrant officers, the majority rejected that argument and held that "[i]f a corporation cannot avail itself of the privilege against self-incrimination, it cannot take advantage of the claimed invalidity of a penalty imposed for refusal of an individual . . . to waive the privilege." *George Campbell Painting Corp. v. Reid*, 392 U.S. 286, 289, 88 S.Ct. at 1980 (1968). Although imposing a sanction pursuant to F.R.Civ.P. 37(b) on the corporations in this case may have some economic impact upon the officers of those corporations who have invoked the Fifth Amendment, because of the corporation's lack of a Fifth Amendment privilege it cannot be heard to complain about that result.

■ The other question to be resolved by the Court is whether sanctions against the corporations are appropriate in this case. Sanctions are usually applied for a willful or deliberate failure to provide information which is properly discoverable and which has been determined to be so by the Court. In this case, the Court's opinions of January 2 and January 9, 1979 left little doubt that information within the knowledge of Messrs. Cairnes, Ulmer, Tedesco and Frable which was gathered in the course of their corporate employment was knowledge of the corporations and therefore properly discoverable by the Plaintiffs. Those individuals have made a deliberate choice not to reveal that information to their corporations based upon the Fifth Amendment. Thus, the Defendants argue that their failure to supply the information to the Plaintiffs resulted in an inability to disclose it. Accepting that fact as true, however, the inability resulted from a deliberate choice on the part of the corporate officers not to reveal information properly belonging to the corporation to a person who could disclose it during the course of this litigation. Therefore, the Court is convinced that the corporations in this case have deliberately refused to reveal properly discoverable material to the Plaintiffs and that sanctions should be imposed upon them for that failure.

■ Once it has been determined that sanctions are appropriate, the Court must consider the nature of the sanctions which should be imposed. The Plaintiffs argue that a default judgment as to liability and impact should be entered against these Defendants. However, the Court believes that that sanction is extremely harsh and is justified only in a situation where a party has repeatedly and in bad faith failed to make discovery and to comply with discovery orders. *See, e.g., In re Anthracite Coal Antitrust Litigation, No. MDL 293* (M.D.Pa. November 30, 1978). Because of the fairly unique factual situation involved in this case, the Court believes that it would be unjust to penalize the Defendants by entering default judgment against them because of their officers' refusal to waive their Fifth Amendment privilege. The Court has discovered only one case involving a factual situation similar to the one raised by the instant motion. In *Securities and Exchange Commission v. American Beryllium & Oil Corp.*, 303 F.Supp. 912 (S.D.N.Y.1969), the Court held that where information was not revealed during discovery proceedings because of the assertion of the Fifth Amendment, a party would be precluded from introducing into evidence the documents which were allegedly incriminating. That case, however, apparently involved the claim of the Fifth Amendment privilege by an individual who was also a Defendant rather than a situation where a corporation is unable to comply with a discovery order because of the invocation of the Fifth Amendment privilege by one of its officers. Nevertheless, the case does provide guid-

ance in terms of evaluating the severity of the sanction which is appropriate. Basically, this Court has three choices with respect to the Defendants' failure to make discovery on the issues relating to the meeting at Brutico's, price communications between the Defendants, and meetings of the Anthracite Producers Advisory Board. It could enter an order that certain designated facts alleged by the Plaintiffs in their complaints be taken to be established, it could direct the Defendants not to oppose those claims, or it could simply prohibit the Defendants from introducing into evidence any testimony relating to those assertions from Messrs. Cairnes, Ulmer, Tedesco, and Frable. The last alternative is the one suggested by the Defendants as appropriate, particularly in light of the facts that the testimony of some of the witnesses which was given under a grant of immunity at the trial of *United States v. Gillen*, (M.D.Pa.), 458 F.Supp. 887, is available to the Plaintiffs and that other persons with knowledge of the subject matter have been deposed. The Plaintiffs assert that such a sanction is not sufficient because although the immunized testimony of some of the officers of the Defendants is available, the Defendants refuse to admit that that testimony is accurate and, further, that a harsher sanction is needed because the Defendants have had the advantage of being able to communicate with Messrs. Cairnes, Ulmer, Tedesco and Frable during their preparation of the defense and that it is impossible for the Court to determine the extent of the advantage gained by the Defendants as a result of such communications.

■ It is the view of the Court that it would be appropriate to direct that the Defendants not introduce into evidence any information relating to the meeting at Brutico's Restaurant, discussions about prices between competitors which occurred either at or after meetings of the Anthracite Producers Advisory Board, and other communications about prices. Although some evidence may have been disclosed by the Defendants which is relevant to those matters, it is clear that the most probative evidence in the possession of the Defendants is that which has not been disclosed. The Court agrees with the Plaintiffs that the Defendants have benefitted to some extent by their ability to confer with Messrs. Cairnes, Ulmer, Tedesco, and Frable and to learn that information which has been concealed from the Plaintiffs. Therefore, in order to offset this advantage and to insure that no information gained directly or uncovered indirectly as a result of communications with those individuals by counsel for the Defendants is used against the Plaintiffs, the sanction of directing that the Defendants not be permitted to offer into evidence any information in opposition to the Plaintiffs' claims on those three designated matters is appropriate.

■ The Plaintiffs have also requested the Court to enter an award of expenses with respect to the preparation of the motion for sanctions. Although sanctions will be imposed against the Defendants, the sanctions are less harsh than originally requested by the Plaintiffs and the reduced severity is based in part upon the Defendants' opposition to the motion. Therefore, because the opposition was not substantially unjustified, the Court does not believe that an order of costs and expenses is appropriate.

An order will be entered imposing sanctions against the Defendants.

## ORDER

1. At the trial of the above-captioned cases, Defendants Reading Anthracite Coal Company, Reading Anthracite Company, Lehigh Valley Coal Sales Company, Greenwood Stripping Corp., Greenwood Mining Company, Lehigh Navigation-Dodson Company and Pocono Fuels, Inc. shall not introduce into evidence any information regarding the following matters:

1.1 A meeting among officers of the Defendants and possibly other coal producing, mining, or selling organizations which allegedly occurred in 1966 or 1967 at Brutico's Restaurant in Old Forge, Pennsylvania;

1.2 Any communications concerning the price at which anthracite coal was to be sold which occurred during or in connection with meetings of the Anthracite Producers Advisory Board;

1.3 Any other communications between or among Defendants in this case concerning the circular price or other price at which anthracite coal was to be sold to any industrial purchaser, the Commonwealth of Pennsylvania, the State of New York, or to brokers offering coal for resale to any of those purchasers.

2. The Plaintiffs' requests for an award of costs and expenses is denied.