**NUTRAMAX LABORATORIES, INC.**

v.

**TWIN LABORATORIES, INC., et al.**

Nos. Civ.A. B–97–787, B–97–1010, B–97–1712.

United States District Court,
D. Maryland.

Jan. 15, 1999.

As Amended Feb. 1, 1999.

332

Robert R. Bowie, Jr., Teresa K. LaMaster, Bowie & Jensen, LLC, Towson, MD, Mark D. Gately, Thomas E. Lynch, III, J. Mark Coulson, John E. McCann, Jr., Miles & Stockbridge, P.C., Baltimore, MD, Bruce P. Smith, Covington & Burling, Washington, DC, for Plaintiff.

Martin S. Himeles, Jr., Julie A. Dugan, Zoe M. Gillen, Zuckerman, Spaeder, Goldstein, Taylor & Better, LLP, Baltimore, MD, Michael S. Pasano, Zuckerman, Spaeder, Goldstein, Taylor & Evans, LLP, Miami, FL, for Defendant.

*OPINION*

WALTER E. BLACK, Senior District Judge.

Presently pending before the Court is a Motion to Strike Affidavits of William Faloon and for Sanctions Against Life Extension Foundation, Inc. filed on May 6, 1998, on behalf of plaintiff Nutramax Laboratories, Inc. ("Nutramax"). On March 18, 1997, Nutramax filed a patent infringement and patent violation suit against eight defendants in *Nutramax Laboratories, Inc. v. Twin Laboratories, Inc. et al.*, Civil Action No. B–97–787. On April 4, 1997, Nutramax filed a complaint against three more defendants in *Nutramax Laboratories, Inc. v. Life Extension Foundation, Inc., et al.*, Civil Action No. B–97–1010. On May 28, 1997, Nutramax filed a complaint against fourteen more defendants in *Nutramax Laboratories, Inc. v. Foster & Smith, Inc., et al.*, Civil Action No. B–97–1712. The Court consolidated the three actions for discovery purposes on February 2, 1998.

In response to a now withdrawn motion to correct the record filed by Life Extension Foundation, Inc. ("Life Extension") on June 6, 1997, relating to service of process on another defendant, Prolongevity Ltd. ("Prolongevity"), Nutramax moved for expedited discovery on the limited issues raised in Life Extension's motion and on the relationship between Life Extension and Prolongevity through depositions of William Faloon, Vice President of Life Extension, and Katy Fischer, a receptionist at Life Extension. In particular, Nutramax requested permission to

depose these individuals, both of whom filed affidavits in support of Life Extension's withdrawn motion to correct the record, to determine the relationship, if any, between Life Extension and Prolongevity. The Court granted plaintiff's request on January 28, 1998. Accordingly, the depositions were held on February 17, 1998, in Fort Lauderdale, Florida. At the depositions of Faloon in both his individual capacity and his capacity as corporate designee under Federal Rule of Civil Procedure 30(b)(6), Faloon repeatedly invoked the Fifth Amendment privilege against self incrimination in response to questions as to Life Extension's relationship to other corporate entities including Prolongevity. As a result, Nutramax filed the pending motion to strike the affidavits[1] of Faloon and for sanctions against Life Extension.

### I.

In its motion to strike the affidavits of Faloon, plaintiff argues that Faloon's invocation of his Fifth Amendment rights was improper in both his individual and corporate capacities, designed to "frustrate Nutramax's legitimate discovery efforts." Plaintiff contends Faloon cannot offer affidavits in support of Life Extension's position and then fail to answer legitimate questions regarding the assertions in those affidavits; therefore, the affidavits must be stricken. Plaintiff makes the same argument as to Faloon's unsolicited speech at the end of his Rule 30(b)(6) deposition, and asks that it be stricken as well. Plaintiff also asserts that a corporate designee cannot invoke the protections of the Fifth Amendment because corporations do not enjoy the privilege. Accordingly, plaintiff moves for Rule 37 sanctions against Life Extension for improperly asserting the Fifth Amendment privilege. Plaintiff requests one of two proposed options for sanctions: (1) that the Court order Faloon to testify at further depositions as to those matters in which he asserted his privilege because he waived whatever privilege he had and that

the Court order Life Extension to reimburse Nutramax for the costs of the February depositions in Florida; or in the alternative, (2) that the Court order that Nutramax be entitled to an adverse inference regarding the alter ego relationship between Life Extension and Prolongevity as a result of Faloon's refusal to answer questions on that issue as well as order that Life Extension provide another Rule 30(b)(6) deponent who has been educated with the corporate information being sought.

Life Extension responded to plaintiff's motion with a motion for leave to file the affidavit of Guy A. Rasco[2] *ex parte*, which the Court granted subject to further order of the Court, and an opposition memorandum. Rasco's affidavit sets forth past and anticipated criminal proceedings and investigations involving Faloon and Saul Kent, President of Life Extension, as the reasons behind Faloon's Fifth Amendment assertions.

### II.

In addressing plaintiff's pending motion, the Court must first determine whether Faloon properly invoked his Fifth Amendment privilege against self-incrimination at his depositions in Florida. It is well settled that the Fifth Amendment privilege may be asserted by a witness in any proceeding, civil or criminal. *See Kastigar v. United States,* 406 U.S. 441, 444–45, 92 S.Ct. 1653, 32 L.Ed.2d 212 ("[The Fifth Amendment privilege] can be asserted in any proceeding, civil or criminal ... and it protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used."), *reh'g denied,* 408 U.S. 931, 92 S.Ct. 2478, 33 L.Ed.2d 345 (1972). It may be invoked not only at trial but also at the pleading stage and in the course of discovery proceedings. *North River Ins. Co., Inc. v. Stefanou,* 831 F.2d 484, 486–87 (4th Cir.

---

1. Faloon submitted three affidavits in connection with motions filed in this case: (1) a Motion to Dismiss or Transfer Venue filed by Life Extension, (2) a Motion to Dismiss filed by Inholtra, and (3) a Motion to Correct the Record filed by

Life Extension. All three motions and attached affidavits have been previously withdrawn.

2. Guy A. Rasco has served as counsel to Faloon and Life Extension for about ten years.

1987), *cert. denied,* 486 U.S. 1007, 108 S.Ct. 1733, 100 L.Ed.2d 196 (1988).

In this case, Faloon claims the privilege due to past and present threats of prosecution. The Court does not need to address the threats of any present or future prosecutorial action to conclude that the November 1991 indictment, which has since been dismissed without prejudice, put Faloon in obvious jeopardy during the pendency of this case. *See Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951) ("The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime."). Consequently, in his individual capacity, Faloon does have a Fifth Amendment privilege as a result of the 1991 indictment with respect to any testimony that might tend to incriminate him.

■ Nevertheless, the Court finds Faloon waived that privilege through the prior introduction of two affidavits [3] in which he swore to statements directly related to the matters raised in Life Extension's withdrawn motion to correct the record and the relationship between Life Extension and Prolongevity.[4] *See In re Edmond,* 934 F.2d 1304, 1308–09 (4th Cir.1991) ("An affidavit operates like other testimonial statements to raise the possibility that the witness has waived the Fifth Amendment privilege."); *see also United States v. Parcels of Land,* 903 F.2d 36, 43 (1st Cir.1990) (striking an affidavit where the witness invoked the Fifth Amendment privilege on deposition). Furthermore, in giving a self-serving speech at the end of his Rule 30(b)(6) deposition in which he discussed the absence of relationship between Life Extension and Prolongevity, Faloon has most certainly waived his privilege on these matters. A witness cannot have it both ways. *See In re Edmond,* 934 F.2d at 1308 ("[T]he Fifth Amendment privilege cannot be invoked as a shield to oppose depositions while discarding it for the limited purpose of making statements to support a summary judgment motion.")

The authoritative case on the Fifth Amendment privilege and issues of waiver in the context of a civil proceeding is *Brown v. United States,* 356 U.S. 148, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958), *reh'g denied,* 356 U.S. 948, 78 S.Ct. 776, 2 L.Ed.2d 822 (1958). In *Brown,* a witness in a denaturalization proceeding was called as an adverse witness by the government and testified that she had not belonged to the Communist Party during the period before 1946. *Id.* 356 U.S. at 150, 78 S.Ct. 622. She then claimed the privilege of self-incrimination refusing to answer the government's questions regarding activities and associations that were unlimited in time or directed to the period after 1946. *Id.* When Brown's lawyer called her as a witness, on direct examination, she further testified that she was a member of the Young Communist League from 1933 until 1930, but had not engaged in Communist activities from 1935 until 1946. *Id.* She also testified that she did not advocate overthrow of the

---

**3.** The two affidavits to which the Court refers are the affidavit attached to Inholtra's withdrawn motion to dismiss and the affidavit attached to Life Extension's withdrawn motion to correct the record. The third affidavit previously filed in these proceedings by Faloon which was attached to Life Extension's withdrawn motion to dismiss does not contain statements on matters relating to the relationship between Life Extension and Prolongevity and, therefore, does not implicate waiver concerns.

**4.** Life Extension argues that Faloon was not required to claim the privilege when he filed his affidavits on June 6, 1997 and September 18, 1997, because he did not have reasonable fear of criminal prosecution at that time and therefore he did not waive his privilege asserted at his depositions in February 1998. The Court is not persuaded by this reasoning. In Faloon's case, an indictment was returned against him in November *1991,* which was subsequently dismissed *without prejudice* in February 1996. Faloon is therefore still subject to being reindicted and is subject to the same reasonable fear of prosecution that has existed continuously since the return of the indictment in November 1991, including the period in June and September 1997, when the two affidavits were introduced. The Court finds it is unnecessary to inquire further into the reasonableness of Faloon's fear of prosecution at any time during the pendency of this civil suit and therefore there is no need to revisit the Court's order granting Life Extension's Motion to File the Affidavit of Guy A. Rasco *Ex Parte.*

government and made other declarations regarding her loyalty to the United States. *Id.* On cross-examination, however, Brown invoked her privilege against self-incrimination and refused to answer the following government question: "Are you now or have you ever been a member of the Communist Party of the United States?" *Id.* 356 U.S. at 152, 78 S.Ct. 622. The district court refused to uphold Brown's claim of privilege and found her in contempt of court; the Court of Appeals affirmed. *Id.* The Supreme Court also affirmed the district court holding that a witness who voluntarily offers testimony on his own behalf waives his privilege to self-incrimination. *Id.* 356 U.S. at 155–157, 78 S.Ct. 622.

The *Brown* Court distinguished *McCarthy v. Arndstein*, 262 U.S. 355, 43 S.Ct. 562, 67 L.Ed. 1023 (1923),[5] a case in which the Court held that a witness compelled to testify in an involuntary bankruptcy proceeding did not waive his privilege against self-incrimination by filing schedules of his assets and liabilities because this evidence was "not an actual admission of guilt or incriminating facts." *Id.* 262 U.S. at 359, 43 S.Ct. 562. Acknowledging that Brown's testimony "did not amount to 'an admission of guilt or furnish clear proof of crime,' but was, on the contrary, a denial of any activities that might provide a basis for prosecution", the *Brown* Court found *Arndstein* inapplicable in a civil case where a witness voluntarily takes the stand and offers testimony on his own behalf.[6] *Brown*, 356 U.S. at 154–55, 78 S.Ct. 622. The *Brown* Court stated:

**5.** For prior proceedings in the Supreme Court, see *Arndstein v. McCarthy*, 254 U.S. 71, 41 S.Ct. 26, 65 L.Ed. 138 (1920).

**6.** The Court recognizes the existence of *Rogers v. United States*, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344, *reh'g denied*, 341 U.S. 912, 71 S.Ct. 619, 95 L.Ed. 1348 (1951), in which the Supreme Court held that "where criminating facts have been voluntarily revealed, the privilege cannot be invoked to avoid disclosure of the details." *Id.* 340 U.S. at 373, 71 S.Ct. 438. The Court finds the *Brown* rule of law more authoritative than *Rogers* as applied to this case in light of the analogous facts. Furthermore, *Brown* postdates *Rogers* by six years, yet it did not cite to the *Rogers'* holding, suggesting a distinction in circumstances between the two cases.

[W]hen a witness *voluntarily* testifies, the privilege against self-incrimination is amply respected without need of accepting testimony freed from the antiseptic test of the adversary process. The witness himself, certainly if he is a party, determines the area of disclosure and therefore of inquiry. Such a witness has the choice, after weighing the advantage of the privilege against self-incrimination against the advantage of putting forward his version of the facts and his reliability as a witness not to testify at all. He cannot reasonably claim that the Fifth Amendment gives him not only this choice but, if he elects to testify, and immunity from cross-examination on the matters he has himself put in dispute. It would make the Fifth Amendment not only a humane safeguard against judicially coerced self-disclosure but a positive invitation to mutilate the truth a party offers to tell.· "[T]here is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability·to challenge his credibility." The interests of the other party and regard for the function of courts of justice to ascertain the truth become relevant, and prevail in the balance of considerations determining the scope and limits of the privilege against self-incrimination.

*Id.* 356 U.S. at 155–56, 78 S.Ct. 622 (emphasis added) (alteration in original) (citation omitted) (footnoted omitted).

The Court is satisfied that *Brown* is entirely applicable to the facts of this case where

The Court also notes that the Fourth Circuit has cited *Rogers* for support in a case where a witness in a criminal trial testified that her grand jury testimony was truthful but refused to answer further questions. *In re Hitchings*, 850 F.2d 180 (4th Cir.1988). The court found this testimony did not amount to waiver of her privilege against self-incrimination because she did not testify to incriminating facts. *Id.* 850 F.2d at 181. *In re Hitchings* is also distinguishable from this case because it involved a situation where the prior testimony was given under a grant of immunity before the grand jury and was thus compelled. *Id.* 850 F.2d at 180. The Court finds that *In re Hitchings* is not contrary to the Court's analysis of this case and the decision not to apply *Rogers* and *Arndstein*. Accordingly, *Brown* is the most analogous case on this waiver issue.

Faloon has voluntarily testified by affidavit and his gratuitous statement at deposition to various facts in a civil proceeding on his own behalf or on behalf of his company, albeit not an admission of guilt or clear proof of a crime. As the *Brown* Court so alluded, *Arndstein* is not applicable here because it dealt with a more narrow circumstance where an individual is subjected to "involuntary examination ... where he is practically in the position of a witness under cross-examination." *Arndstein,* 262 U.S. at 359, 43 S.Ct. 562. *See Brown,* 356 U.S. at 154, 78 S.Ct. 622. In the *Arndstein*-type situation where the testimony of a witness is compulsory, the law makes it more difficult to find a waiver of the witness's privilege, requiring a clear admission of guilt or proof of a crime. *See also, e.g., In re Hitchings,* 850 F.2d 180 (4th Cir.1988) (nonparty witness compelled to testify in criminal trial found not to have waived her Fifth Amendment privilege). However, in this case, as in *Brown,* where the witness is testifying voluntarily on his own behalf in a civil proceeding, waiver of the privilege may be found despite the facially innocent testimony. *See Brown,* 356 U.S. at 154, 78 S.Ct. 622; *see also Presser v. United States,* 284 F.2d 233, 235 (D.C.Cir. 1960) (witness who testified before congressional committee that he complied with the subpoena to the best of his ability was found to have waived his Fifth Amendment privilege as to questions regarding whether he destroyed any records). Thus, the Court in this case must determine whether Faloon in fact waived his privilege as articulated in *Brown,* and if so, the scope of that waiver.

In reviewing the deposition testimony provided by plaintiff, the Court finds that Faloon invoked the privilege relating to matters raised in Life Extension's withdrawn motion to correct the record and the *relationship between Life Extension and Prolongevity.* In accordance with *Brown,* if Faloon testified to these matters either in his prior affidavits or in his gratuitous speech at the end of his Rule 30(b)(6) deposition he waived his privilege against self-incrimination on these matters.

In reviewing the deposition testimony provided by plaintiff, the Court is satisfied that Faloon invoked the privilege with respect to matters raised in Life Extension's withdrawn motion to correct the record and the relationship between Life Extension and Prolongevity. Accordingly, the Court must determine whether Faloon testified to these matters either in his prior affidavits or in his gratuitous speech at the end of his Rule 30(b)(6) deposition in order to find a waiver of the privilege.

The three affidavits submitted by Faloon in this case on which plaintiff relies as constituting a waiver have all been withdrawn; however, their effect on Faloon's privilege is not eliminated by their withdrawals. Moreover, plaintiff requests not only that the affidavits be stricken, but also that the Court order that these withdrawn affidavits be forever banned from any use in this case.

The Court first notes that the Faloon affidavit submitted in support of Life Extension's Motion to Dismiss or to Transfer Venue did not touch upon the subject matter as to which the Fifth Amendment privilege was asserted at the depositions. The affidavits submitted in support of Inholtra's Motion to Dismiss and Life Extension's Motion to Correct the Record do, however, relate to the relationship between Life Extension and Prolongevity as to which Faloon invoked the privilege at his depositions. For example, in the affidavit submitted in support of Inholtra's motion to dismiss, Faloon states: "LEF distributed the arthritis pain relief formulation, CHONDROX, at the time of the initial introduction by Prolongevity, Inc. (PROLONGEVITY) in January/February 1992." Faloon also attaches a Prolongevity newsletter dated March–April 1992, referring to Chondrox. More apparent are the statements in Faloon's affidavit submitted in support of Life Extension's motion to correct the record in which he discusses the lack of relationship between Life Extension and Prolongevity in terms of business location and corporate structure. Moreover, Faloon's speech made at the end of his Rule 30(b)(6) deposition clearly discussed the relationship between Life Extension and Prolongevity. As such, this speech was also a plain waiver of the privilege. The principles of waiver

deal precisely with the problems that arise from Faloon's self-serving · statements. A fact finder is left with a distorted view of the evidence, resulting from the opposing party being without the opportunity to cross examine the witness raising the possibility of perjurious testimony going unchallenged. *Brown v. United States,* 356 U.S. at 156, 78 S.Ct. 622.

■ The Court finds the temporal distinction articulated by counsel for Life Extension incorrect as a matter of law. Life Extension argues that the contours of the privilege and likewise any waiver can be framed in terms of time periods. Life Extension asserts that Faloon must invoke his privilege not to testify as to relationships between Life Extension and Prolongevity from January 21, 1993 [7] until some time in 1995, because the nature of the relationship during that period implicates Fifth Amendment concerns. Thus, Life Extension argues Faloon did not waive his privilege not to testify as to that time period because the affidavits and deposition testimony he gave only addressed the relationship between Extension and Prolongevity today. Significantly, Life Extension provides no legal support for this temporal distinction and the Court finds that it is not an established principle of the law of privilege. Rather, as the Court discussed *supra,* the privilege applies to facts as defined by subject matter or topics and not by time. Indeed, the facts underlying the Supreme Court decision in *Brown* negate the existence of any such principle. Accordingly, the Court finds Faloon waived any personal Fifth Amendment privilege he had with respect to the matters raised in Life Extension's withdrawn motion to correct the record and the relationship between Life Extension and Prolongevity at any time.

### III.

As to Life Extension's Rule 30(b)(6) deposition, it is undisputed that Life Extension, as a corporation, has no Fifth Amendment privilege. *Braswell v. United States,* 487 U.S. 99, 102, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988) ("[P]etition asserts no self-incrimination claim on behalf of the corporations; it is well established that such artificial entities are not protected by the Fifth Amendment."). In this case, Faloon invoked his personal Fifth Amendment privilege during Life Extension's Rule 30(b)(6) deposition, and now Life Extension claims there is no knowledgeable person to attend a Rule 30(b)(6) deposition who would testify without asserting the privilege.

The Supreme Court, in *United States v. Kordel,* explained that service of interrogatories upon a corporation requires the corporation to designate an agent with knowledge to answer the discovery. 397 U.S. 1, 8, 90 S.Ct. 763, 25 L.Ed.2d 1, *cert. denied,* 400 U.S. 821, 91 S.Ct. 41, 27 L.Ed.2d 49 (1970). The Court acknowledged that it would be "incongruous permit a corporation to select an individual to verify the corporation's answers, who because he fears self-incrimination may thus secure for the corporation the benefits of a privilege it does not have." *Id.* (citation omitted) (emphasis in original). The Court, however, did not find it necessary to answer the question of what to do when there is no one available to testify on behalf of the corporation because of self-incrimination concerns. *Id.* 397 U.S. at 8–9, 90 S.Ct. 763. In *In re Anthracite Coal Antitrust Litigation,* however, a district court imposed sanctions on defendant corporations where the only persons with corporate knowledge to attend Rule 30(b)(6) depositions invoked their individual Fifth Amendment privileges. 82 F.R.D. 364, 369–70 (M.D.Pa.1979). The court reasoned that the inability to answer at the depositions:

> resulted from a deliberate choice on the part of the corporate officers not to reveal information properly belonging to the corporation to a person who could disclose it during the course of this litigation. Therefore, the Court is convinced that the corporations in this case have deliberately refused to reveal properly discoverable material to the Plaintiffs and that sanc-

---

**7.** When pressed further on the importance of this date, counsel for Life Extension stated that Faloon could not testify about Prolongevity's corporate structure prior to 1993, but he could testify as to Life Extension prior to 1993.

tions should be imposed upon them for that failure.

*Id.* 82 F.R.D. at 369; *cf. City of Chicago v. Reliable Truck Parts Co., Inc.,* 768 F.Supp. 642, 647 n. 8 (N.D.Ill.1991) ("To the extent Reliable's officers are unwilling to provide it with information sought in the 30(b)(6) deposition, Reliable's failure to respond to questions seeking such information must be deemed deliberate.").

The Court has already ruled that Faloon has waived any personal privilege he may have had with respect to the relationship between Life Extension and Prolongevity, nevertheless, there remains Life Extension's failure to produce a knowledgeable 30(b)(6) deponent pursuant to the Court's order. Life Extension claims that Faloon and Kent are the only individuals with sufficient corporate knowledge. The Court is thus still faced with plaintiff's request for sanctions as a remedy for this situation.

## IV.

■ Rule 37(b) authorizes sanctions for failure to comply with court orders and particularly where Rule 30(b)(6) deponents fail to comply with a discovery order. The basis for plaintiff's motion for sanctions is Faloon's improper assertion of the privilege in both his individual and corporate designee capacities with respect to the issues specified in the Court's order for expedited discovery.

■ The Fourth Circuit utilizes a four-part test in determining the appropriateness of Rule 37 sanctions: (1) whether the non-complying party acted in bad faith; (2) the amount of prejudice its noncompliance caused its adversary; (3) the need for deterrence on the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions. *Mutual Federal Savings & Loan Ass'n v. Richards & Assocs., Inc.,* 872 F.2d 88, 92 (4th Cir.1989). The Court is satisfied that sanctions are appropriate here where Faloon acted in bad faith in waiving the privilege in prior affidavits and then making a self-serving speech at the end of his Rule 30(b)(6) deposition while claiming the privilege at the deposition to certain questions on the same matters. Moreover, the information sought by plaintiff regarding Prolongevi-

ty is not only essential to further discovery in the case relating to Prolongevity, and service of process thereon, but may become crucial in challenging a future substantive legal defense. This litigation has been declared complex for discovery and scheduling purposes and will likely involve other issues of privilege and waiver with respect to Faloon and possibly other witnesses; therefore, it is appropriate for the Court to deal directly with this situation. There is a clear need for deterrence of this particular sort of noncompliance, now or in the future, in this litigation.

Accordingly, the Court finds that plaintiff's first set of requested sanctions is appropriate in light of all the circumstances with the exception of the request for fees and costs incurred as a result of the Florida depositions. The Court has considered all of the less drastic sanctions proffered by counsel and finds that none will accomplish the purpose required in order for the plaintiff herein to obtain the information sought in discovery, to which it is clearly entitled. The Court will first order that all the affidavits submitted by Faloon in these proceedings thus far be stricken, despite the fact that they are all presently withdrawn, so as to prevent any future use thereof in this litigation. The Court also orders that the gratuitous speech made at the end of Faloon's Rule 30(b)(6) deposition be stricken. Faloon is hereby ordered to appear for further depositions, if plaintiff so chooses, and to testify in accordance with the Court's determination that he waived his privilege as to matters raised in Life Extension's withdrawn motion to correct the record and the relationship between Life Extension and Prolongevity. If Faloon fails to so testify, he will be subject to the contempt power of the Court.

Counsel for Faloon, if it is determined to be appropriate, may seek a protective order to prohibit disclosure of Faloon's testimony at any further depositions to anyone beyond the scope of the existing stipulated protective order, including any federal or state prosecutorial authority or law enforcement or regulatory agency or authority. *See, e.g., Martindell v. International Tel. & Tel. Corp.,* 594 F.2d 291, 297–298 (2d Cir.1979); *but see In re*

*Grand Jury Subpoena,* 836 F.2d 1468, 1473 (4th Cir. 1988) (distinguishing the power of a grand jury subpoena from an informal prosecutorial request).

Finally, the Court will not award costs and fees to plaintiff incurred in deposing Fischer and Faloon in Florida. Plaintiff was forewarned by counsel for Life Extension of the Fifth Amendment issues; nevertheless, they were compelled to go forward with the depositions in order to build a record on which to base their arguments of waiver of the privilege and sanctions. Furthermore, plaintiffs were able to obtain some nonprivileged testimony from Faloon and the deposition testimony of Fischer. Under all of the circumstances, an award of fees and costs would not be appropriate.

## V.

For all of the foregoing reasons, the Court will grant in part and deny in part plaintiff Nutramax's Motion to Strike Affidavits and for Sanctions.

A separate Order shall be entered in accordance with this Opinion.

## *ORDER*

In accordance with the foregoing Opinion, IT IS, this 15th day of January, 1999, by the United States District Court for the District of Maryland,

ORDERED:

(1) That plaintiff Nutramax Laboratories, Inc.'s Motion to Strike Affidavits of William Faloon and for Sanctions Against Life Extension Foundation, Inc. (Paper 63) IS GRANTED IN PART and DENIED IN PART as follows:

(a) That the motion is GRANTED IN PART as to the following:

(i) That the three affidavits of William Faloon and the unsolicited speech of William Faloon at the Rule 30(b)(6) deposition are stricken and no other use may be made thereof by Life Extension in this case;

(ii) That William Faloon shall appear for further depositions, if plaintiff chooses, and he may not invoke the Fifth Amendment privilege relating to Life Extension Foundation, Inc.'s now withdrawn Motion to Correct the Record and the relationship between Life Extension Foundation, Inc. and Prolongevity, Ltd.;

(b) That the motion is denied in all other respects; and

(2) That the Clerk shall mail a copy of this Order together with the foregoing Opinion forthwith to counsel of record.